# UNITED STATES DISTRICT COURT
### for the
### Northern District of California

| | |
|---|---|
| United States of America<br>v.<br><br>Moises Hernandez (HERNANDEZ)<br>*Defendant(s)* | )<br>)<br>) Case No. 3:24-mj-71465 MAG<br>)<br>)<br>)<br>) |

**FILED**
Oct 01 2024
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **April 9, 2024** in the county of **San Francisco** in the **Northern** District of **California**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), (b)(1)(C) | -it is unlawful for any person to knowingly possess with intent to distribute a federally controlled substance. |

This criminal complaint is based on these facts:

See attached affidavit of DEA TFO Domenico Discenza.

☑ Continued on the attached sheet.

/s/ Domenico Discenza
*Complainant's signature*

Domenico Discenza, DEA Task Force Officer
*Printed name and title*

Approved as to form    Jeffrey Bornstein
                 AUSA Jeffrey Bornstein

Sworn to before me and signed in my presence.

Date: 09/30/2024

*Judge's signature*

City and state: San Francisco, California     Alex G. Tse, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR AN ARREST WARRANT AND CRIMINAL COMPLAINT

I, Domenico Discenza, a Task Force Officer with the Drug Enforcement Administration, having been duly sworn, hereby depose and state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for an arrest warrant and criminal complaint charging Moises Hernandez (HERNANDEZ) with 21 U.S.C. §§ 841(a)(1), (b)(1)(C) based on his possessing with the intent to distribute a mixture or substance containing a detectable amount of fentanyl and methamphetamine on September 18th, 2024, in San Francisco, California, in the Northern District of California.

## SOURCES OF INFORMATION

2. The facts in this affidavit come from my personal observations, my training and experience, information from records and databases, and information obtained from other agents, officers, and witnesses. Where statements made by other individuals (including other Special Agents and law enforcement officers) are referenced in this Affidavit, such statements are described in sum and substance and in relevant part. Similarly, where information contained in reports and other documents or records are referenced in this Affidavit, such information is also described in sum and substance and in relevant part.

3. Because this affidavit is submitted for the limited purpose of establishing probable cause for a criminal complaint and arrest warrant, I have not included each and every fact known to me about this case. Rather, I have set forth only the facts that I believe are necessary to support probable cause for a criminal complaint and arrest warrant. My understanding of the facts and circumstances of the case may evolve as the investigation continues.

## AFFIANT BACKGROUND

4. I am a Sergeant at the San Francisco Police Department ("SFPD") and have worked as a sworn officer for the SFPD for approximately 25 years. I have been assigned as a

Sergeant at the SFPD Narcotics Unit since March 2023, and prior to that was a Sergeant at the Strategic Investigations/Homicide Detail for approximately nine years. I am a sworn Task Force Officer ("TFO") for the Drug Enforcement Administration ("DEA"). I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7). I am empowered by law to conduct investigations, to execute search warrants, and to make arrests for offenses of federal law, including drug offenses.

5. In the police academy and at SFPD Detective School, I received narcotics-related and narcotics investigations training, covering all aspects of drug investigations, including identification of controlled substances, physical surveillance, utilization of confidential sources, interview techniques, undercover operations, and the general operation of drug trafficking organizations. During my career, I have received hundreds of hours of continuing education training in law enforcement investigations, including training on drug trafficking investigations and specifically, fentanyl investigations.

6. During my employment at SFPD, I have participated in many controlled substance investigations. I have discussed the methods and practices used by drug traffickers with other law enforcement officers. I have also had conversations with drug users and sellers over the course of my career. I have also participated in many aspects of drug investigations including, but not limited to, undercover operations, records research, physical surveillance, and the execution of federal and state search warrants and arrest warrants that resulted in the arrest of suspects and seizure of controlled substances. I have reviewed numerous reports related to drug investigations and arrests. I have also prepared search warrants and arrest warrants related to various crimes against persons investigations.

7. Based on my training and experience, as well as conversations I have had with drug dealers, informants, and experienced law enforcement officers, I have become familiar with the practices of narcotics traffickers. Specifically, I am familiar with methods that traffickers use to smuggle, safeguard, transport, and distribute narcotics, and to collect and launder the proceeds of drug trafficking.

8. I have also had discussions with other law enforcement officers about the packaging and preparation of narcotics, the methods of operation, and security measures that are often employed by narcotics traffickers. I have examined documentation of various methods in which fentanyl and methamphetamine and other illicit drugs are smuggled, transported, possessed with intent to distribute, and distributed. I am familiar with the appearance of marijuana, heroin, cocaine, methamphetamine, fentanyl, and other controlled substances.

9. I am familiar with the facts and circumstances of the investigation through my participation in it based on several investigative techniques, including discussions with agents and officers from other law enforcement agencies, and review of records and reports relating to the investigation. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the statement is not being recounted verbatim but instead only in substance and in part. Facts not set forth herein, or in any attached exhibits, are not being relied on in reaching my conclusion that the requested order should be issued. Nor do I request that this Court rely on any facts not set forth herein in reviewing this application.

## APPLICABLE STATUTE

10. Under 21 U.S.C. § 841(a)(1) and (b)(1)(C), it is unlawful for any person to knowingly possess with intent to distribute a federally controlled substance. Under 21 C.F.R. § 1308.12, fentanyl and methamphetamine are Schedule II controlled substances.

## STATEMENT OF PROBABLE CAUSE

11. On March 23, 2024, HERNANDEZ was arrested by SFPD officers in the area of Hyde and Fulton Street in the Tenderloin bordering the Northern Police District in San Francisco. On April 9, 2024, the Honorable Alex G. Tse, United States Magistrate Judge, issued an arrest warrant for HERNANDEZ for the violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), possession with intent to distribute fentanyl. HERNANDEZ was arrested on the Federal case on 4/23/2024 and was sentenced to time served plus one court day. Alameda County/ Santa Rita Jail then released HERNANDEZ back into the community and he has since failed to appear at U.S. Probation for supervision. Since HERNANDEZ's release he has been arrested a second time by

SFPD officers for selling to an undercover officer on September 18, 2024, which will be detailed in this complaint.

12.     On September 18, 2024, HERNANDEZ was arrested by SFPD officers in the area of Grove and Larkin Street in the Tenderloin/ bordering the Northern Police District in San Francisco, California in the Northern District of California. Based on the facts below, there is probable cause to believe that HERNANDEZ violated 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), based on his possession with intent to distribute a mixture or substance containing a detectable amount of fentanyl and methamphetamine.

13.     On September 18, 2024, at approximately 22:00 hours, SFPD Officers were conducting a buy/ bust operation in the Tenderloin and surrounding areas. The Tenderloin Police District is known as an open-air drug market, where drugs are bought, sold, and consumed 24 hours a day. As enforcement has increased in the area, the drug dealing has also shifted to other areas directly bordering the Tenderloin.

14.     A buy/bust is a law enforcement strategy involving an under-cover officer purchasing narcotics from a drug dealer in exchange for marked city funds (U.S. Currency). Once the money for drugs is exchanged and completed, the under-cover officer will give a signal to indicate the purchase and exchange was successful. The drug dealer/ seller is then arrested by SFPD officers.

15.     Officer Jeffrey Ospital (UC) was designated the under-cover officer and in possession of marked city funds and in plain clothes. With him were two additional cover officers also dressed in plain clothes.

16.     At approximately 24:54 hours, the UC walked eastbound on the north sidewalk of Grove Street, from Polk Street, toward Larkin. The UC walked up to the San Francisco Public Library front entry way. The UC approached HERNANDEZ and engaged him in conversation and negotiated to purchase twenty dollars' worth of "clean" fentanyl from him. "Clean' is a term used by drug dealers and drug users to indicate a more potent or pure product to produce a better

high. The UC then provided a ten dollar note and two five-dollar notes of marked city funds in exchange for the suspected fentanyl.

17. Once the drugs for money exchange was complete, the UC provided the signal to indicate he had successfully purchased drugs. The cover officer broadcast the suspect description as a Hispanic male wearing a black and white hat, black jacket, white shirt, blue jeans, and black shoes. SFPD officers moved into the location and took Hernandez into custody. The cover officer confirmed that the arresting officers had the correct subject.

18. Officer Jesse O'Keefe conducted a custodial arrest search of HERNANDEZ and seized suspected fentanyl, methamphetamine, a scale, and $495.00 in U.S. Currency. Officer Harris located the ten dollar and two five-dollar bills of marked city funds within the seized currency.

19. HERNANDEZ was transported to Tenderloin Station and booked on state charges. At Tenderloin Station, Officer Mendez #893 weighed and tested the suspected narcotics using the TruNarc Analyzer for field testing.

   a. Fentanyl seized form HERNANDEZ right front jacket pocket weighed 17.7 gross grams and tested presumptive positive for fentanyl.

   b. Suspected fentanyl seized from HERNANDEZ's left front jacket pocket weighed 25.7 gross grams and tested presumptive positive for fentanyl.

   c. Suspected methamphetamine seized from HERNANDEZ's front left jacket pocket weighed 23.8 gross grams and tested presumptive positive for methamphetamine.

   d. Fentanyl seized from Hernandez's right front pants coin pocket weighed .6 gross grams and tested presumptive positive for fentanyl.

   e. The suspected fentanyl purchased by the UC weighed 1.5 grams and tested presumptive positive for fentanyl.

5

  

| Fentanyl | Fentanyl | Methamphetamine |
| --- | --- | --- |
| 17.7. gross grams | 25.7 gross grams | 23.8 gross grams |



Fentanyl .6 gross grams



Purchased Fentanyl 1.5 gross grams

20.     Based on my knowledge training, experience, and consultation with other officers I am aware that those engaged in distribution, sales or furnishing of a controlled substance will have multiple types of drugs to serve their customers. This is supported by the two types of drugs possessed by HERNANDEZ, methamphetamine and fentanyl. Also the drugs were packaged in multiple plastic bags in a larger amount to break drugs off and sell as needed, and in other small individual baggies. The digital scale possessed by HERNANDEZ is also commonly used by drug dealers to weigh the drugs as they sell them or for pre-packaging. Additionally, the amount of fentanyl and methamphetamine which was possessed by HERNANDEZ was a greater quantity possessed than for mere personal use.

21.     HERNANDEZ also possessed Four Hundred Ninety-Five Dollars in U.S. Currency in various denominations in the following values: 1 x $100, 1 x $50, 4 x $20, 9 X $10, 23 x $5 and 60 x $1. Based on my training, experience and conversations with other officers, I know that drug users typically use smaller bills to facilitate their drug purchases because they typically purchase small amounts of drugs for personal use. Drug dealers may also have various denominations on their person because they can also give change, or they have already completed numerous deals. Lastly, HERNANDEZ sold drugs to an under-cover officer in an area known for drug sales and use and the marked city funds used for the purchase were recovered.

## CONCLUSION

22.     Based on the information above, there is probable cause to believe that on or about September 18th, 2024, HERNANDEZ violated 21 U.S.C. §§ 841(a)(1), (b)(1)(C), based on his possession with intent to distribute a mixture or substance containing a detectable amount of fentanyl and methamphetamine.  Accordingly, I respectfully request that the Court issue a criminal complaint and a warrant for his arrest.

/s/
Domenico Discenza
Task Force Officer
Drug Enforcement Administration

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this 30th day of September 2024.

HONORABLE ALEX TSE
United States Magistrate Judge

2090-9967-9745, v. 1